**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DR. DAVID BEACH and CHRISTOPHER KELLY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CITIGROUP ALTERNATIVE INVESTMENTS LLC and CITIGROUP, INC.,<br><br>        Defendants. | No. 12-cv-7717 (GHW)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS**
**AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     DESCRIPTION OF THE LITIGATION......................................................................4

III.    THE PROPOSED SETTLEMENT ...........................................................................6

        A.      Settlement Consideration ...........................................................................6

        B.      Plan of Allocation .......................................................................................7

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL...............................8

        A.      The Settlement is the Result of Good Faith, Arms'-Length Negotiations by
                Well-Informed and Experienced Counsel ...........................................................9

        B.      The Substantial Benefits for the Class, Weighed Against Litigation Risks
                Strongly Support Preliminary Approval ...............................................................10

        C.      The Stage of the Proceedings Supports Preliminary Approval ...........................11

V.      THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS
        CERTIFICATION UNDER FED. R. CIV. P. 23.........................................................12

        A.      Numerosity ...............................................................................................13

        B.      Commonality .............................................................................................14

        C.      Typicality..................................................................................................14

        D.      Adequacy..................................................................................................15

        E.      Ascertainability.........................................................................................16

        F.      Common Questions of Law Predominate and a Class Action is the
                Superior Method of Adjudication .......................................................................17

VI.     ZAMANSKY LLC AND KAPLAN FOX & KILSHEIMER LLP SHOULD BE
        APPOINTED CLASS COUNSEL PURSUANT TO RULE 23(G) ...............................18

        A.      Standard for Appointment of Class Counsel .........................................................18

        B.      The First Factor:  Zamansky LLC and Kaplan Fox Have Spent Significant
                Time and Devoted Substantial Resources to This Action.....................................19

        C.      The Second Factor: Zamansky's and Kaplan Fox's Experience Qualifies
                the Firms to Serve as Class Counsel ....................................................................19

D.      The Third Factor: Zamansky and Kaplan Fox Have Proven Knowledge of the Applicable Law ...................................................................................... 19

E.      The Fourth Factor: Zamansky and Kaplan Fox Have The Resources Necessary to Represent the Proposed Class ............................................... 20

VII.    THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE ........................... 21

A.      The Form of the Proposed Notice ......................................................... 21

B.      The Notice Program Comports with Due Process ................................. 22

VIII.   PROPOSED SCHEDULE ......................................................................................... 23

IX.     CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................. 12, 14, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  133 S. Ct. 1184 (2013) ...................................................................................... 18

*Cohen v. J.P. Morgan Chase & Co.,*
  262 F.R.D. 153 (E.D.N.Y. 2009) ........................................................................ 9

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ............................................................................... 13

*Daniels v. City of N.Y.,*
  198 F.R.D. 409 (S.D.N.Y. 2001) ...................................................................... 16

*Dietrich v. Bauer,*
  192 F.R.D. 119 (S.D.N.Y. 2000) ...................................................................... 17

*Dorn v. Eddington Sec., Inc.,*
  No. 08 Civ. 10271 (LTS), 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ................... 23

*Dunnigan v. Metro. Life Ins. Co.,*
  214 F.R.D. 125 (S.D.N.Y. 2003) ...................................................................... 16

*Erica P. John Fund, Inc. v. Halliburton Co.,*
  131 S. Ct. 2179 (2011) ...................................................................................... 17

*Fogarazzo v. Lehman Bros.,*
  232 F.R.D. 176 (S.D.N.Y. 2005) ................................................................. 14, 16

*Iglesias-Mendoza v. LaBelle Farm, Inc.,*
  239 F.R.D. 363 (S.D.N.Y. 2007) ...................................................................... 18

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
  689 F.3d 229 (2d Cir. 2012) ........................................................................ 12, 18

*In re Bank of America Corp. Sec., Deriv. and ERISA Litig.,*
  258 F.R.D. 260 (S.D.N.Y. 2009) (Chin, J.) ....................................................... 20

*In re Bear Stearns Co., Inc., Sec. Derivative, and Empl. Ret. Income Sec. Act (ERISA) Litig.,*
  08 M.D.L. No. 1963 (RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ................... 20

*In re Flag Telecom Holdings Ltd. Sec. Litig.,*
  No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................. 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ................................................................................15

*In re Global Crossing Secs. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  210 F.R.D. 476 (S.D.N.Y. 2002) .......................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ...........................................................................9

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................23

*In re Michael Milken & Assoc. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) .........................................................................21

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................9

*In re Oxford Health Plans, Inc.*,
  199 F.R.D. 119 (S.D.N.Y. 2001) .......................................................................15

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ....................................10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................8, 9

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................10

*In re Take Two Interactive Secs. Litig.*,
  No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010)..........passim

*In re Terzaosin Hydrachloride*,
  220 F.R.D. 672 (S.D. Fla. 2004).......................................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 1695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)...........................................10

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................23

*Karvaly v. eBay Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ...........................................................................8

*Marylebone PCC Limited – Rose 2 Fund v. Millennium Global Investments Ltd., et al.,*
   1:12-cv-3835, ECF No. 89 (S.D.N.Y. 2014) (Crotty, J.) .......................................................20

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993) ...............................................................................................15

Robinson v. Metro-North Commuter R. R. Co.,
   *267 F.3d 147 (2d Cir. 2001)*...............................................................................................14

*Schleicher v. Wendt,*
   618 F.3d 679 (7th Cir. 2010) ..............................................................................................17

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
   546 F.3d 196 (2d Cir. 2008) ...............................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ........................................................................................ 8, 9, 22

## RULES

Fed. R. Civ. P. 23 ....................................................................................................... 12, 23

Fed. R. Civ. P. 23(a).............................................................................................. 13, 15, 16, 17

Fed. R. Civ. P. 23(a)(1) ...................................................................................................13

Fed. R. Civ. P. 23(a)(2) ...................................................................................................14

Fed. R. Civ. P. 23(a)(3) ...................................................................................................14

Fed. R. Civ. P. 23(b)(3)................................................................................................ 13, 17

Fed. R. Civ. P. 23(e)................................................................................................... 8, 22

Fed. R. Civ. P. 23(e)(1) ...................................................................................................22

Fed. R. Civ. P. 23(g) .......................................................................................................18

Fed. R. Civ. P. 23(g)(1)(B) ..............................................................................................18

Fed. R. Civ. P. 23(g)(1)(C)(i) ...........................................................................................18

Plaintiffs Dr. David Beach and Christopher Kelly ("Lead Plaintiffs"), on behalf of themselves and the proposed Settlement Class (as defined below), have reached a proposed settlement of the above-captioned securities class action lawsuit (the "Action" or the "Litigation") for a total of $13,500,000.00 in cash (the "Settlement"), representing a percentage recovery of damages that exceeds those in similarly-sized securities class actions, as discussed in detail below.  If approved, the proposed Settlement will resolve all claims in the Action on behalf of investors in Citigroup's now-closed "Corporate Special Opportunities" hedge fund (the "CSO Fund").  Lead Plaintiffs respectfully move the Court for an order preliminarily approving the Settlement, approving the form and manner of providing notice of the Settlement to the Class, preliminarily certifying a Settlement Class for the purpose of Settlement, appointing Class Counsel, and setting a hearing date at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.  Defense counsel have advised that Defendants do not oppose the motion.

## I.   <u>INTRODUCTION</u>

Subject to Court approval, and as described herein, Lead Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle all claims asserted in the Action against Defendants Citigroup, Inc. ("Citi" or "Citigroup") and Citigroup Alternative Investments LLC ("CAI") in exchange for $13.5 million in cash (the "Settlement Consideration"), to be deposited into an interest-bearing escrow account following preliminary approval.

As set forth in the Settlement Agreement ("Agreement"), attached as Exhibit 1 to the Declaration of David A. Straite in Support of Lead Plaintiffs' Motion dated August 10, 2015 ("Straite Declaration"), the Settlement, if approved, will resolve all claims against Defendants

and certain related parties.  Lead Plaintiffs' principal reason for entering into the Settlement is the very substantial cash benefit provided for the Settlement Class, considered against the significant risk that a smaller recovery – or indeed, no recovery – might be achieved following additional motion practice, a trial of the Action and/or completion of any subsequent appeals. The Settlement was reached after almost three years of extensive litigation and prolonged, arms'-length settlement negotiations.

During the course of the litigation, Lead Plaintiffs, through proposed Lead Counsel, among other things: (i) conducted an extensive investigation into the Class' claims; (ii) drafted three detailed amended complaints; (iii) opposed Defendants' motions to dismiss in several rounds of briefing; (iv) engaged in extensive discovery in three countries (United States, United Kingdom and Cayman Islands); (v) conducted third-party document discovery; (vi) conducted six depositions and defended three additional depositions; (vii) initiated Hague Convention process to secure additional deposition testimony of two UK residents (and participated in additional post-Hague proceedings in the English Court with respect to one witness); (viii) retained UK solicitors, one of the UK's top hedge fund experts, and a leading damages expert; and (ix) engaged in more than two-dozen in-person and telephonic meetings with defense counsel over the course of the litigation before reaching an agreement in principle.  Document discovery had largely concluded prior to settlement -- including the production of more than 300,000 pages of documents – and confirmatory discovery is not needed. As a result, Lead Plaintiffs and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

Lead Plaintiffs have closely monitored and participated in this litigation, both have produced several rounds of documents, and both have been deposed.  Both recommend that the

Settlement be approved.  Further, proposed Lead Counsel, who have extensive experience in prosecuting securities class actions, believe that the Settlement is in the best interests of the Class, which is comprised of persons who purchased, held or otherwise acquired any class of shares in CSO Ltd. or CSO US Ltd. – the two feeder funds in the CSO Fund open to outside investors.

At the final approval hearing (the "Final Approval Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Action.  At this juncture, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be disseminated to the Class and the Final Approval Hearing may be scheduled.

Lead Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Hearing ("Preliminary Approval Order"), which has been agreed upon by the Parties, a copy of which is attached as Exhibit 2 to the Straite Declaration.  The Preliminary Approval Order will, if granted: (i) preliminarily approve the Settlement set forth in the Agreement; (ii) approve the form and manner of giving notice to the Class; (iii) preliminarily certify a Settlement Class for the purposes of Settlement; (iv) appoint Class Counsel; and (v) set a date for the Final Approval Hearing at which the Court will consider final approval of the Settlement, approval of the Plan of Allocation for distribution of the Settlement Fund, and counsel's application for attorneys' fees and expenses.

## II.   **DESCRIPTION OF THE LITIGATION[1]**

During the relevant period of 2004 to 2008, alternative investment products were sold by Defendant CAI to clients of Citigroup and its affiliates, including the "Corporate Special Opportunities" hedge fund ("CSO Fund" or the "Fund"). The CSO Fund consisted of a master fund and three feeder funds (two of which, CSO US Ltd. and CSO Ltd., were open to outside investors), and it invested principally in distressed debt. A "private placement memorandum" (PPM) for CSO US Ltd. and CSO Ltd. was prepared for investors in 2004, and revised in October 2006 and July 2007. The revised 2006 PPM added a "Key Man Event" (or "KME") clause that gave all investors the right to redeem upon the resignation or termination of the fund manager's CEO. The 2006 and 2007 PPMs represented that the Fund's investment objective was "to generate attractive risk-adjusted returns with low volatility" and also represented that Citigroup and/or CAI would monitor the Fund's risk profile to ensure adherence to various restrictions consistent with the Fund's investment objective.

In May 2007, the CSO Fund offered to participate in a €7.2 billion syndicated loan arranged for a German broadcast company called ProSieben. The lead arrangers allocated €558 million to the Fund on June 29, 2007, an amount that Plaintiffs contend exceeded the CSO Fund's entire net asset value ("NAV") and violated at least one of the Fund's internal investment restrictions. The investment manager attempted to cancel the ProSieben order, arguing that certain terms had been materially changed prior to allocation. Both sides explored litigation.

In November 2007, the Fund agreed in principle to settle with the lead arrangers for €512 million, but the market value of the assets had fallen substantially since allocation in June. The CEO of the investment manager disagreed with the decision and resigned on December 12, 2007.

---

[1] Although Defendants do not oppose this motion, their counsel advise that they do not adopt Plaintiffs' description of the facts in this section nor Plaintiffs' description of the losses or damages suffered by the Class.

Two days later, the Fund informed investors of the CEO's departure (and thus the triggering of the KME redemption right).  Plaintiffs also contend that investors first learned of the existence of the ProSieben dispute at this time.  The letter also encouraged investors to stay in the Fund, representing that "the quality of the CSO fund's overall portfolio is fundamentally sound," a statement that Plaintiffs contend was false and misleading.  A loss reserve of $62.4 million was taken with respect to the ProSieben allocation (the "ProSieben Loss"), and this was reported to investors.   Following a substantial volume of redemption requests, the Fund suspended redemptions on January 25, 2008.  Citigroup provided approximately $159 million of support to the Fund.  Despite this support, a compulsory redemption occurred on or about November 18, 2008, and investors lost the bulk of their investment.

Beginning in 2008, some investors commenced litigation or arbitrations, alleging that they were misled into purchasing or holding their CSO Fund shares by statements allegedly made to them by employees of Citigroup affiliates.  Ultimately, 11 investors commenced or threatened to file individual actions.  *See* Declaration of Ramesh Parameswar dated December 14, 2014 ("Parameswar Decl."), at ¶ 12, fn. 5 [ECF No. 120].  In October 2012, CSO Ltd. feeder fund investor Dr. David Beach commenced this securities class action, asserting common law contract, fraud and negligent misrepresentation claims [ECF No. 1].  CSO US Ltd. investor Christopher Kelly joined as an additional plaintiff  in September 2013 [ECF No. 63].

On March 7, 2014, after several motions to dismiss, the Court allowed fraud and aiding and abetting fraud "purchaser" claims to proceed against Citigroup and CAI (and similar "holder" claims to proceed against CAI), but dismissed claims against two UK-based defendants on jurisdictional grounds, and dismissed contract and negligence claims.  [ECF No. 87].  On October 27, 2014, the plaintiffs moved to certify a proposed class of CSO Fund investors [ECF

No. 108].  On June 3, 2015, after fact discovery had substantially concluded, the remaining parties confidentially notified the Court via letter of an agreement to settle, executed a memorandum of understanding on June 25, 2015, and executed a final settlement agreement on August 10, 2015.

## III.    THE PROPOSED SETTLEMENT

### A.    Settlement Consideration

The Settlement provides that Defendants will pay $13.5 million, in cash, into an interest-bearing escrow account for the benefit of the Class.  This Settlement consideration and interest, after the deduction of attorneys' fees and expenses awarded by the Court, and notice and administration expenses and taxes (the "Net Settlement Fund"), will be distributed among those Class Members who submit timely and valid Verification and Release Forms ("Authorized Claimants"), in accordance with the Plan of Allocation set forth in the Notice.

Lead Plaintiffs believe that the proposed Settlement is an excellent recovery on the claims asserted in this Action, and is in all respects fair, reasonable, adequate and in the best interests of the Class.   Lead Plaintiffs believe that under any measure, the percentage recovery of damages achieved for the class is between 2 and 4 times greater than the median recovery in comparable settlements.

If "estimated damages" are defined to mean the Class Members' share of the ProSieben Losses discussed above, estimated damages are $39.2 million,[2] and the settlement of $13.5 million means the Class will recover 35% of damages.  This figure is three to four times greater than median percentage in similarly-sized securities class actions as reported by Cornerstone Research.   *See* Cornerstone Research, *Securities Class Action Settlements, 2014 Review and*

_____

[2]  Total "ProSieben Losses" incurred by the CSO Fund were approximately $62.4 million.  Of this amount, Plaintiffs calculate that $39.2 million (or 63%) was borne by investors who meet the Class definition.

*Analysis* ("Cornerstone Report"), p. 9, figure 8 (attached to Straite Decl. as Exhibit 5).[3]  If instead damages are defined in the broadest possible sense with respect to the entire value of Class Members' investments held on November 30, 2007 immediately prior to the ProSieben Loss (a definition which Plaintiffs support but Defendants oppose), the settlement of $13.5 million means the Class will recover approximately 4% of their estimated damages of $337 million,[4] a percentage figure <u>twice</u> the median settlement for similarly-sized securities class actions.[5]  Finally, no matter which measure of damages is used, today's settlement exceeds the median securities class action settlement as a percentage of damages (regardless of size) for each and every year from 2005 through 2014.  *See* Cornerstone Report at 8, figure 7.

### B.      Plan of Allocation

Under the proposed Plan of Allocation (the "Plan"), the proposed Claims Administrator will calculate each Authorized Claimant's "Recognized Claim" based on information supplied by Citigroup and Verified by each Class Member.  The Net Settlement Fund will be allocated to the extent of Recognized Claims submitted by Authorized Claimants.

The structure of the Plan, which is set forth in full in the Notice, is comparable to plans of allocation that have been used in other securities class actions related to unwound investment funds.  The Plan allocates the Net Settlement Fund according to a simple pro-rata calculation based on each Authorized Claimants' net asset value ("NAV") in CSO Fund shares at the end of

---

[3]  Cornerstone Research reports median settlements as a percentage of estimated damages by damages ranges.  For securities class actions with damages under $50 million, the median settlement represented approximately 9.9% of damages in 2014.  For the period 2005 through 2013, the median was 11.7%.  *See* Cornerstone Report at 9, figure 8.

[4]  The aggregate NAV of the investments held by members of the Class was $337 million immediately prior to the ProSieben Loss, *see* Parameswar Decl. at ¶ 12, representing 63% of the total NAV of the CSO Fund.  The settlement consideration of $13.5 million thus represents approximately 4% of this broad definition of "estimated damages."

[5]  For securities class actions with damages between $250 million and $499 million, the median settlement recovered approximately 1.9% of damages in 2014.  For the period 2005 through 2013, the median was 2.3%.  Cornerstone Report, p. 9, figure 8.

the month in which redemptions were suspended (i.e., January 31, 2008). The Plan provides for a longer-than-normal period in which to submit Verification and Release Forms (a full 180 days), but then provides for a single, full disbursement only to verified and authorized claimants. There will be no unclaimed Settlement Consideration that can revert to the Defendants. Lead Plaintiffs submit that the Plan is fair and reasonable and should be approved together with the Settlement at the Fairness Hearing.

The Plan is not a part of or a condition of approval of the Settlement. Under the Agreement, the Net Settlement Fund may be distributed in accordance with the proposed Plan or such other plan as the Court may approve.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of class claims. Judicial review of a class action settlement consists of a two-step process: preliminary approval and a subsequent fairness hearing. At preliminary approval, the standards are more relaxed than those applied upon a motion for final approval. *See Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The Court's function in the preliminary approval stage is "to ascertain whether there is any reason to notify the class members of the proposed settlement

and to proceed with a fairness hearing." *Prudential*, 163 F.R.D. at 209. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *accord Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

Lead Plaintiffs here request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement so that notice of the Settlement can be given to the Settlement Class. As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that the Settlement is well "within the range of possible approval" and that preliminary approval should be granted. *Initial Pub. Offering*, 243 F.R.D. at 87.

### A.   The Settlement is the Result of Good Faith, Arms'-Length Negotiations by Well-Informed and Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See Wal-Mart*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) (same). Here, the Settlement was achieved only after protracted arm's-length negotiations, and after fact discovery had substantially concluded.

9

Further, in determining the good faith of this settlement proposal, the Court should consider the judgment of Lead Counsel. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 105 (S.D.N.Y. 1997) ("'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Lead Counsel are among the nation's leading securities fraud litigation and arbitration firms. Accordingly, their judgment that the Settlement is in the best interest of the Class should be given considerable weight. Consequently, the Court has ample evidence that the Settlement was negotiated in good faith by well-informed counsel, and was not the product of collusion.

## B.    The Substantial Benefits for the Class, Weighed Against Litigation Risks Strongly Support Preliminary Approval

The proposed Settlement creates a very substantial settlement fund of $13,500,000.00 in cash. This recovery provides a substantial benefit to the Class, especially in light of the risks posed by trial. *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (noting that "[i]n evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain") (citation and quotation omitted). The benefit of the present proposed Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved following further motion practice, trial and/or likely appeals, possibly many months, or even years, into the future.

The claims alleged by the Class involve complex legal and factual issues. If the Action were to proceed to trial, Lead Plaintiffs would have to overcome the numerous defenses asserted by Defendants. Among other things, the Parties disagree about (i) whether Defendants made

misrepresentations in the PPMs or otherwise; (ii) whether Defendants had a legal duty under New York common law to disclose additional information that was allegedly omitted; (iii) whether the alleged false statements or omissions were material; (iv) whether Defendants acted with scienter; (v) whether the NAV of the CSO Fund was artificially inflated; (vi) whether Lead Plaintiffs and the Class were harmed by the conduct alleged in the Third Amended Complaint; (vii) whether "holder" claims are viable under New York law on the facts specific to this case; and (viii) whether a class could have been certified in light of the "reliance" element of a fraud claim under New York common law.  The Parties also disagree on the appropriate methodology for determining damages, even if liability were established, and whether Citigroup's $159 million of support for the CSO Fund in 2008 mitigated damages related to plaintiffs' claims.

In addition, Lead Plaintiffs are confident that even if they were to prevail on liability and damages at trial, Defendants would appeal the verdict.  At best, the appeals process would lead to further delays, and, at worst, it would lead to a recovery that is less than the Settlement Consideration or possibly no recovery at all.  This Settlement enables the Class to recover without incurring any additional risks or costs.

### C.    The Stage of the Proceedings Supports Preliminary Approval

As will be set forth in further detail prior to the Final Approval Hearing and as summarized herein, Lead Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of its claims against Defendants after nearly three years of intensive litigation.  This understanding is based on the fact that the Court dismissed a number of defendants and claims, and the fact that the CSO Fund itself has been unwound.  Lead Plaintiffs' discovery efforts included serving and responding to document requests and interrogatories, issuing document subpoenas to third parties, engaging in multiple meet and confer conferences with Defendant, commencing Hague process to secure witness

testimony in the United Kingdom, working with Defense counsel to negotiate a document subpoena for documents located in the Cayman Islands and to obtain documents held at the Fund's outside administrator, and the production, review and analysis of more than 300,000 pages of documents.

At the time the Settlement was reached, Lead Plaintiffs and Lead Counsel had a clear view of the strengths and weaknesses of the claims.  Additionally, Lead Plaintiffs actively participated in this case throughout the course of the litigation, and both have produced documents and been deposed by Defense counsel.  Thus, the Settlement is the product of serious, informed, non-collusive negotiations, is well within the range of possible approval, and does not have any obvious deficiencies.  For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Class.

## V.      THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

"Courts often certify classes for settlement purposes, and it is not uncommon for courts to certify settlement classes on a preliminary basis, at the same time as the preliminary approval of the fairness of the settlement, solely for the purpose of settlement, deferring final certification of the class until after the fairness hearing."  *In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, at *16 (S.D.N.Y. June 29, 2010).  "Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).  The United States Supreme Court has recognized that the requirements for approving a settlement class are lower than those for a litigated class. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

Rule 23(a) sets forth the following four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  Where, as here, the plaintiff alleges that a class may be maintained under Rule 23(b)(3), a court may grant class certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

The proposed Class is defined in the Agreement as:  all persons or entities who purchased (directly or indirectly) any class of shares in CSO US Ltd. or CSO Ltd.; the Class excludes: (i) Defendants Citigroup and CAI and their affiliates and successors, to the extent they invested proprietary capital, as well as certain former defendants, to the extent they or their spouse or any entity controlled by them invested in the CSO Fund; (ii) any person who served as a member of the Board of Directors of the CSO Fund or the Board of Directors of CSO Partners Ltd., or any entity controlled by that person; (iii) any persons who have either released claims related to or arising from the subject matter of this dispute against Defendants in a settlement, or have secured a final judgment from an arbitrator or a court that would preclude further litigation; and (iv) persons who affirmatively exclude themselves from the Class.  Lead Plaintiffs submit that the proposed Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

### A.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable, but not impossible. *Take Two*, 2010 U.S. Dist. LEXIS 143837, at *18.  "Precise calculation of the number of class members is not required before certifying a class; in fact, numbers in excess of forty generally satisfy the numerosity requirement." *Id.* at *18-19 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Here, Defendants

have admitted that the CSO Fund had approximately 300 investors, see Parameswar Decl., more than 250 of whom are Class Members.

### B.    Commonality

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class.  *Robinson v. Metro-North Commuter R. R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001).  This requirement "has been applied permissively in securities fraud litigation. In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied."  *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (citations omitted).

The common questions of fact and law include: (i) whether the PPMs contained materially false statements; (ii) whether the Defendant CAI misstated and/or omitted to state material facts in in the Dec. 14, 2007 letter to investors; (iii) whether the Defendants participated directly or indirectly in the course of alleged misconduct; (iv) whether the Defendants knew or recklessly disregarded that their statements were false and misleading; (v) whether the price of CSO Fund shares were artificially inflated due to the allegedly false statements; and (vi) the extent of damage sustained by Class Members, and the appropriate measure of damages.

### C.    Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem,* 521 U.S. at 625 (common-issues test readily met in securities cases). However, typicality does not require that the situations of Lead Plaintiffs and the class members be identical, as long as "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendants liability." *Take Two*,

2010 U.S. Dist. LEXIS 143837, at *20 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)).

Here, the claims of Lead Plaintiffs arise from the same events or course of conduct that give rise to claims of other class members, and the claims asserted are based on the same legal theory. *See Take Two*, 2010 U.S. Dist. LEXIS 143837, at *21 (explaining that the test for typicality is whether "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented") (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).  Indeed, because Lead Plaintiffs purchased shares in each of the two feeder funds open to outside investors, and because all investors received the same Dec. 14, 2007 investor letter alleged to be false and misleading, the claims of all class members derive from the same legal theories and allege the same set of operative facts.  *See Take Two*, 2010 U.S. Dist. LEXIS 143837, at *21; *In re Oxford Health Plans, Inc.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001).

### D.    Adequacy

A representative party must satisfy the adequacy requirement of Rule 23(a) by showing that it will fairly and adequately protect the interests of the Class.  To satisfy this requirement, the Second Circuit explained that "[a]dequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Flag Telecom*, 574 F.3d at 35 (internal quotation marks omitted).

As described above, Lead Plaintiffs have claims that are typical of and coextensive with those of the Class.  Lead Plaintiffs, like all Class Members, purchased and/or held CSO Fund shares in reliance on alleged materially false and misleading statements and/or omissions, and were allegedly damaged thereby.  Further, Lead Plaintiffs have retained counsel highly experienced in securities class action litigation and who have successfully prosecuted many

securities and other complex class actions throughout the United States.   Lead Counsel's qualifications are discussed in more detail below.   Lead Counsel has further demonstrated their adequacy by the substantial work undertaken in prosecuting this Action as discussed herein.

E.     **Ascertainability**

Finally, although Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts. *Take Two*, 2010 U.S. Dist. LEXIS 143837, at *23.   Referred to as "ascertainability," an ascertainable class exists if its members can be identified by reference to objective criteria.   *Id.* (citing *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003) (citation and quotations omitted)).  "Class members need not be ascertained prior to certification, but the exact membership of the class must be ascertainable at some point in the case."   *Fogarazzo*, 232 F.R.D. at 181 (internal quotation marks omitted).   "The court must be able to make this determination without having to answer numerous [individualized] fact-intensive questions." *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001) (internal quotation marks and citations omitted).

The Class proposed here is easily ascertainable using actual data from the Defendants, because each CSO Fund investor was required to sign a subscription agreement that provided contact information, and such data can be – and already has been – supplied by the Defendants to A.B. Data Ltd. ("A.B. Data" or "Claims Administrator"), subject to this Court's confidentiality order [ECF No. 94].   Accordingly, there exists a precise and objective basis to determine which CSO Fund investors qualify as members of the Class, and how to contact them.

**F.     Common Questions of Law Predominate and a Class Action is the Superior Method of Adjudication**

In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule 23(b)(3), which requires that the proposed class representative establish that common questions predominate over individual questions, and that a class action is superior to other methods of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

Common questions of law and fact predominate and a class action is the superior method available to fairly and efficiently litigate this securities action.  The "superiority of class actions in large securities [cases] is well recognized."  *See Amchem*, 521 U.S. at 625 (finding common questions predominated in securities class action certified for settlement).  The "predominance test generally is 'readily met in certain cases alleging consumer or securities fraud.'"  *Take Two*, 2010 U.S. Dist. LEXIS 143837, at *26 (quoting *Amchem*, 521 U.S. at 625 (internal quotation marks and citations omitted)); *accord In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002) ("Class actions are generally well-suited to securities fraud cases, in large part because they avoid the time and expense of requiring all class members to proceed individually.") (internal quotation and citation omitted).  "In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."  *Dietrich v. Bauer*, 192 F.R.D. 119, 127-28 (S.D.N.Y. 2000).

Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common."  *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).  Likewise, here, Defendant's alleged misstatements during the Class Period affected all investors alike and proof of falsity, materiality, scienter, and causation can be made on a class-wide basis.  *See Amgen Inc.*

*v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1197 (2013) (citing *Schleicher*, 618 F.3d at 685, 687).  As a result, common questions of law and fact predominate.

Finally, on October 27, 2014, Lead Plaintiffs moved to certify a class of CSO Fund investors, which Defendants opposed primarily on *predominance* grounds; they argued "plaintiffs cannot prove actual and reasonable reliance on a class-wide basis, and thus individual issues predominate."  Brief in Opposition to Plaintiffs' Motion for Class Certification, Dec. 14, 2014 ("Opp. Brief"), at 1 [ECF No. 118].  However, it is well-established that settlement moots reliance issues in (b)(3) determinations in fraud class actions.  *See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d at 241 (in a settlement class, "the manageability concerns posed by numerous individual questions of reliance disappear").[6]  As noted above, Defendants no longer oppose class certification in light of the settlement.

## VI.   ZAMANSKY LLC AND KAPLAN FOX & KILSHEIMER LLP SHOULD BE APPOINTED CLASS COUNSEL PURSUANT TO RULE 23(g)

### A.   Standard for Appointment of Class Counsel

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel, who must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  Under this Rule, the court evaluates counsel according to (1) their work in identifying and investigating plaintiffs' claims, (2) their experience in similar litigation, (3) their knowledge of applicable law, and (4) the resources they will commit to prosecuting the action. Fed. R. Civ. P. 23(g)(1)(C)(i); *see Iglesias-Mendoza v. LaBelle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y. 2007).  These criteria are met by both proposed class counsel firms, Zamansky LLC and Kaplan Fox & Kilsheimer LLP.  Full firm resumes accompany this motion.  *See* Straite Decl., Exs. 2 & 3.

---

[6]  Similarly, Defendants' primary basis for opposing the "adequacy" of Lead Plaintiffs in the Opp. Brief was the contention that individual issues of reliance raised unique defenses; now that the case has settled, individual defenses to reliance are no longer relevant.

**B.**     **The First Factor:  Zamansky LLC and Kaplan Fox Have Spent Significant Time and Devoted Substantial Resources to This Action**

The attorneys and other professionals in this case have invested substantial time and effort identifying and investigating claims against Defendants on behalf of the putative class. Before filing the original action on behalf of Plaintiff Dr. David Beach, attorneys at both firms investigated the facts surrounding Plaintiff's investment in the Funds, reviewed the offering materials and documents sent to investors, investigated allegations made by the investment manager's CEO, reviewed the Funds' liquidation, researched the relevant legal principles and proceedings in earlier related litigation brought by CSO Fund investors, and drafted the first complaint, among other pre-filing activities.  The parties have engaged in substantial discovery, involving more than 300,000 pages of documents, 9 completed depositions, Hague Convention process securing 2 additional depositions, related proceedings in the English Court, investigation of documents filed in several related actions, engaging Kaplan Fox's in-house certified fraud examiner, and other vigorous efforts to protect the class.

**C.**     **The Second Factor: Zamansky's and Kaplan Fox's Experience Qualifies the Firms to Serve as Class Counsel**

The second factor also supports the appointment of Zamansky and Kaplan Fox as class co-counsel.  The Action has been led by Jacob Zamansky and Edward Glenn, Jr. at Zamansky LLC, and by Frederic Fox and David Straite at Kaplan Fox.  These attorneys have extensive experience in class actions and other complex litigation pertaining to securities and the rights of investors as well as in other complex litigation.  *See* Straite Decl., Exs. 2 & 3.

**D.**     **The Third Factor: Zamansky and Kaplan Fox Have Proven Knowledge of the Applicable Law**

The third factor to be considered similarly supports the appointment of Zamansky and Kaplan Fox as class counsel.  Because of their extensive experience in representing plaintiffs in

complex investor protection cases, both firms have a considerable background in federal and state securities laws and other related claims. The firms' direct, relevant experience litigating class and complex actions involving issues of the offer and sale of securities merits appointment of the firms as interim class counsel in these actions.  In addition, both firms have experience representing investors in securities litigation and private hedge fund litigation.  *See In re Terzaosin Hydrachloride*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (counsel's "experience in, and knowledge of, applicable law in this field" in the "most persuasive" factor in connection with the appointment of lead counsel); *accord, In re Bear Stearns Co., Inc., Sec. Derivative, and Empl. Ret. Income Sec. Act (ERISA) Litig.*, 08 M.D.L. No. 1963 (RWS), 2009 WL 50132, at **11-12 (S.D.N.Y. Jan. 5, 2009) ; *see also Marylebone PCC Limited – Rose 2 Fund v. Millennium Global Investments Ltd., et al.*, 1:12-cv-3835 (S.D.N.Y. 2014) (Crotty, J.), order preliminarily approving settlement of hedge fund class action settlement and appointing Zamansky LLC as co-lead class counsel [Marylebone PCC Limited ECF No. 89]; *In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) (Chin, J.) (appointing Kaplan Fox as co-lead class counsel; counsel found to be "highly experienced in prosecuting class actions").

### E.    The Fourth Factor: Zamansky and Kaplan Fox Have The Resources Necessary to Represent the Proposed Class

Finally, Zamansky and Kaplan Fox have the ability and commitment to devote substantial resources to completing their representation of Plaintiffs and the proposed class during the administration of the Settlement.  Zamansky LLC  and Kaplan Fox have a history of committing ample resources to class action litigation, and will do the same here.

## VII.   THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE

### A.   The Form of the Proposed Notice

If the Court preliminarily approves the Settlement, notice will be provided to former CSO Fund shareholders by: (1) publishing the Summary Notice as a quarter-page advertisement in the national edition of *Investor's Business Daily*; (2) publishing the Summary Notice via a national wire service; (3) setting up and maintaining a dedicated settlement website to be identified in the Notice and Summary Notice (the "Settlement Website"); (4) establishing a toll-free telephone number to call for information regarding the Settlement; and (5) providing a copy of the Notice to any former CSO Fund shareholder who requests one through the toll-free number.

The Notice and Summary Notice, attached as Exhibits to the Settlement Agreement, will advise Class Members of the principal terms of the Settlement, and they each will specify the Settlement Website address and the toll-free number to call for information regarding the Settlement.  They will also describe the procedure for objecting to the Settlement and provide specifics regarding the date, time and place of the Settlement Hearing.  The Settlement Website will provide access to copies of the Notice, Summary Notice, Settlement Agreement and important documents filed with the Court, and will also provide dates and deadlines regarding the Settlement, including the deadline for submitting objections and the date of the Settlement Hearing, as well as the toll free number.  *See, e.g.*, *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice need only describe the terms of the settlement generally).

The Notice will also advise Class Members that if the Settlement is approved, Lead Counsel intend to apply to the Court for an award of attorneys' fees, and for reimbursement of their expenses incurred in prosecuting the case (the "Fee Application").  The Notice will inform Class Members that if the Settlement is approved, the Court will thereafter hold a hearing to consider the Fee Application and any objections thereto, and that information regarding the Fee

Application and such hearing will be made available on the Settlement Website and by calling the toll-free number.

### B.     The Notice Program Comports with Due Process

Rule 23(e) requires that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval" and as a part of the approval process, the "court must direct notice in a reasonable manner to all class members." Rule 23(e)(1).  Similarly, the standard for determining the adequacy of a settlement notice under either the Due Process Clause or the Federal Rules is *reasonableness*.  *Wal-Mart*, 396 F.3d at 113.  The Second Circuit has held: "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements . . . . Notice is adequate if it may be understood by the average class member."  *Id.* at 114 (internal citation and quotation marks omitted).

Here, the Notice contains all necessary information in an easily-accessible format.  The Notice advises recipients of their legal rights and obligations, including the right to object to any portion of the Settlement or the Fee Application.  Contact information for Lead Counsel is provided, as well as the Settlement Website and the toll-free number.

A.B. Data, an experienced and diligent settlement and claims administrator whose company information is attached to the Straite Declaration as Exhibit 4, was selected by counsel for Lead Plaintiffs for Court approval after a rigorous proposal and bidding process.  A.B. Data will cause the Summary Notice to be published once in the *Investors' Business Daily* and the *PR Newswire*, a national business-oriented wire service.  Further, Defendants have already provided data and approved its use by the Claims Administrator for the purpose of identifying and giving <u>actual</u> notice to each purchaser of CSO Fund shares.  The Claims Administrator will then use reasonable efforts to give notice to nominee banks who act as record owners but not as beneficial

owners.  These nominee purchasers will be directed to promptly send the Notice, including the Plan of Allocation and Verification and Release Form, by first class mail to the beneficial owners.

Lead Counsel believe that, because the Notice and Summary Notice fairly apprise Class members of their rights with respect to the Settlement, they represent the best notice practicable under the circumstances and should be approved by the Court.  The manner of providing notice, which includes individual notice by mail to all Class members who can be reasonably identified and additional publication notice, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 (LTS), 2011 WL 382200, at *4 (S.D.N.Y. Jan. 21, 2011); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 448-49 (S.D.N.Y. 2004). Accordingly, Lead Plaintiff respectfully submits that the Court should approve the proposed notice program and their form and content.  *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 130 (S.D.N.Y. 2008) (in class action, notice program consisted of, among other things, a website and publication in *USA Today* and on the PR Newswire).

## VIII.  **PROPOSED SCHEDULE**

As outlined in the proposed Preliminary Approval Order submitted herewith, no later than twenty-eight (28) business days after entry of the Preliminary Approval Order (the "Notice Date"), A.B. Data will notify Class Members of the Settlement by mailing a copy of the Notice and the Verification and Release Form, substantially in the forms attached as Exhibits to the Settlement Agreement (the "Settlement Notice Packet") to each Person identified in connection with the dissemination of the Class Notice, or who otherwise may be identified through

reasonable effort, including through Citigroup's reasonable best efforts to make its records and information available to A.B. Data for the purpose of identifying and giving notice to the Class.

The proposed Preliminary Approval Order further requires, not later than ten (10) business days after the Notice Date, that Lead Counsel cause the Summary Notice to be published once in the national edition of *Investor's Business Daily*, to be transmitted over the *PR Newswire*, and to be posted on the website established for the Action.

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement. The agreed-upon form of Notice, Exhibit A to the Settlement Agreement, currently contains blanks for certain deadlines, which will be filled in once the Court sets those dates and prior to the mailing to Class Members. The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing Settlement Notice and Claim Form to the Class ("Notice Date") | 28 business days after entry of Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 business days after the Notice Date |
| Filing of briefs in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's fee and expense request | November 4, 2015 |
| Receipt deadline for objections and requests to opt out of Class | November 25, 2015 |
| Filing of reply memoranda in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's fee and expense request | December 10, 2015 |
| Final Approval Hearing | December 17, 2015 |
| Deadline for submitting Claim Forms | 180 calendar days after Notice Date |

## IX.    <u>CONCLUSION</u>

For all the foregoing reasons, Lead Plaintiffs respectfully requests that the Court grant preliminary approval of the proposed Settlement and enter the accompanying proposed Preliminary Approval Order.

Dated: August 10, 2015
    New York, NY

| **ZAMANSKY LLC** | **KAPLAN FOX & KILSHEIMER LLP** |
|---|---|
| */s/ Jacob S. Zamansky* | */s/ David A. Straite* |
| Jacob H. Zamansky | Frederic S. Fox |
| Edward H. Glenn, Jr. | David A. Straite |
| 50 Broadway, 32nd Floor | 850 Third Avenue |
| New York, NY  10004 | New York, NY  10022 |
| Tel. (212) 742-1414 | Tel. (212) 687-1980 |
| Fax (212) 742-1177 | Fax (212) 687-7714 |
| *jake@zamansky.com* | *dstraite@kaplanfox.com* |

*Counsel for Plaintiffs and Proposed Class Counsel*

**LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C.**

*/s/ Christopher J. Gray*
Christopher J. Gray
360 Lexington Avenue, 14th Floor
New York, New York 10017
Tel. (212) 838-3221
Fax (212) 937-3139
*chris@investorlawyers.net*

*Additional Counsel for
Plaintiff Christopher Kelly*

**CERTIFICATE OF SERVICE**

I, David A. Straite, hereby certify that on August 10, 2015, I caused the foregoing to be electronically filed using the Court's CM/ECF system, which will automatically send a notice of electronic filing to counsel of record.

/s/ David A. Straite
David A. Straite