UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: CSO HEDGE FUND LITIGATION

No. 12-cv-7717 (GHW)

ECF Case

**SUPPLEMENTAL POST-HEARING BRIEF IN FURTHER SUPPORT OF: (A) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; AND (B) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

ZAMANSKY LLC
Jacob H. Zamansky
Edward H. Glenn, Jr.
50 Broadway, 32nd Floor
New York, NY  10004
Tel. (212) 742-1414
Fax (212) 742-1177
*jake@zamansky.com*

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox
David A. Straite
850 Third Avenue
New York, NY  10022
Tel. (212) 687-1980
Fax (212) 687-7714
*dstraite@kaplanfox.com*

*Counsel for Plaintiffs and Class Counsel*

Lead Plaintiffs Dr. David Beach and Christopher Kelly, on behalf of themselves and the Settlement Class as defined in the Settlement Agreement dated August 10, 2015 (the "Settlement Agreement") and in this Court's order preliminarily approving the settlement dated August 19, 2015 (the "Preliminary Approval Order") at ¶ 3 [ECF 149], and Class Counsel Zamansky LLC and Kaplan Fox & Kilsheimer LLP, respectfully submit this supplemental brief to provide further information requested at the fairness hearing on December 17, 2015 (the "Fairness Hearing") and in accordance with this Court's Order dated December 22, 2015 [ECF No. 161]. Accompanying this brief are supplemental declarations from David A. Straite and Edward Glenn, Jr.

**I.      Plan of Allocation / Class Definition**

In the operative complaint (filed pre-discovery), plaintiffs brought claims on behalf of all purchasers of CSO Fund shares, excluding the defendants and excluding investors known at the time to have resolved prior individual related litigation. *See* Third Amended Complaint dated Sept. 9, 2013 [ECF No. 63] (the "TAC") at ¶ 133. During discovery, plaintiffs learned that the class size was approximately 270 investors under this proposed definition. But five purchasers were fortunate enough to have submitted requests to redeem their entire investment prior to December 14, 2007, the date investors first learned of problems with the CSO Fund. An additional three sought *partial* redemptions prior to December 14. Plaintiffs learned that these eight investors received their requested redemptions.

Therefore, in the Motion for Class Certification a year later, plaintiffs requested a somewhat more limited class definition that would only include purchasers who were trapped in the fund when redemptions were suspended, i.e., January 25, 2008. *See* Motion for Class Certification dated October 27, 2014 [ECF No. 108] at 1-2. In essence, plaintiffs proposed to exclude five investors from the new proposed class, and the three partial redeemers would

receive a reduced recovery. The details of these eight redemptions are set forth below in Attachment A.

The parties agreed upon the original full class definition as a key term of the settlement, see ECF No. 148-1, Section 2.1. However, plaintiffs' proposed plan of allocation only distributes the net settlement fund on a pro-rata basis to investors whose redemptions were suspended. *See* Notice, ECF No. 148-2 at 8 ("Plan of Allocation"). This plan logically and equitably would exclude these eight investors' redeemed investments from the pro rata calculation.[1]

It is common in securities class actions for class members to receive no distribution under the allocation plan where, as here, they suffered no losses linked to the alleged fraud. For example, writing for the Second Circuit, then-Judge Sotomayor upheld a plan that "excluded claimants who had not suffered out-of-pocket losses from the defendant's fraud" and citing to earlier authority, repeated that "the equities clearly support" a plan where "the most grievously injured claimants should receive the greatest share of the fund." *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 84 (2d Cir. 2006) (internal citations omitted). Likewise, in *In re: Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156 (S.D.N.Y. 2007), an objector class member protested exclusion from the distribution, arguing that the better course should have been to simply exclude him from the class definition. *Id.* at 169. The court disagreed, noting that "it is well-settled in the Second Circuit that it is not inequitable for a plan of allocation to provide" no recovery to some class members. *Id.* The

---

[1] The proposed plan of allocation is not a necessary term of the settlement, and a change to the plan of allocation is not grounds for the termination of the settlement. The plan of allocation may be considered separately from the fairness, reasonableness, and adequacy of the settlement. [ECF No. 148-1 at § 7.2.].

court further noted that if the objector disagreed, he had the right to opt out of the class and pursue his own litigation. *Id.*

Here, five investors requested full redemption of their investment in the CSO Fund prior to any outside investor knowing of the ProSieben dispute, and prior to investors knowing of the looming liquidity problems at the fund that plaintiffs allege were the result of risk oversight failures. All five investors were redeemed from the fund while other investors were trapped. It is in accord with Second Circuit authority cited above to include the redeemers in the class but distribute none of the Net Settlement Fund to them. This way, the plaintiffs are able to give Citigroup "global peace" (without which plaintiffs believe a deal could not have been reached), and also ensure that the Net Settlement Fund is not distributed in an inequitable fashion. Equally importantly, a class defined to include the redeeming investors in the proposed class is procedurally sound as it affords these redeemers class notice and an opportunity to object and be heard by the Court *in their capacities as class members* – or alternatively opt out of the class and pursue any claims they believe they have. Excluding them from the class would deny them these advantages. The plaintiffs therefore respectfully request that the class definition and plan of allocation be approved without change.

## II.     Range of Reasonableness of the Settlement in Light of the Best Possible Recovery

In the Second Circuit, when evaluating the substantive terms of a class-wide settlement, courts employ the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in

> light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Id.* at 463. "In applying the *Grinnell* factors, a court should not substitute its judgment for those of the parties who negotiated the settlement, or conduct a 'mini-trial' on the action's merit." *In re: Hi-Crush Partners L.P. Sec. Litig.*, 12-cv-8557-CM, 2014 WL 7323417 at *4 (S.D.N.Y. Dec. 19, 2014) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)). Instead, a court considers the *Grinnell* factors *in toto* and determines whether the proposed class settlement is "fair, adequate, and reasonable." *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The eighth *Grinnell* factor in this case strongly supports approval. There are two parts to an inquiry under the eighth factor. First, the court considers the best possible recovery absent a settlement. Second, the court evaluates whether the proposed settlement amount is in the range of reasonableness, "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal–Mart*, 396 F.3d at 119.

Plaintiffs asserted two types of claims in this case: purchaser claims and holder claims. The purchaser claims were based on defendants' representations to investors (at the time of purchase) that Citigroup would monitor risk management at the CSO Fund, in part to ensure that the fund had the ability to cash out any redeeming investors within 6 months of the departure of the CEO (the "key man"). Plaintiffs alleged this statement was false from the beginning, and the result was a fund employing a leverage ratio substantially mismatched to the highly illiquid investments in the fund. The fund also had no system in place to prohibit an investment manager from committing to a single trade worth more than the entire fund, as happened with the

4

ProSieben order. In short, because of no risk control, leverage was too high to unwind the fund in the face of large key-man-event redemptions.

The holder claims are similar, but based on defendant CAI's failure to tell investors of the ProSieben dispute between July and December 2007, and also based on CAI's assurances to investors on December 14, 2007 that the portfolio was "sound." The only damages traceable to the alleged fraud under both types of claims, however, relate to *leverage* – too much leverage by choice in 2007, too much leverage required to finance the massive ProSieben trade, and too much leverage when asset prices fell during the credit crisis.

As noted in the Memorandum of Law in Support of the Motion for Preliminary Approval dated Aug. 10, 2015 [ECF No. 147] at 7, class members lost approximately $337 million. If the Court were to consider 100% of this loss as the "best possible recovery," a settlement of $13.5 million (approximately 4% of losses) is squarely in the range of reasonableness given other similarly-sized class actions, as discussed in detail in the Cornerstone Research report accompanying the motion. *Id*. However, in analyzing the best possible recovery it is necessary to assess the likelihood of a full recovery being realized. For example, in *In re: Bear Stearns Cos., Inc. Sec., Deriv. and ERISA Litig.*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012), some class members objected to a $294 million settlement that only recovered 1-2% of more than $19 billion of losses. The court rejected the denominator: "A plaintiff asserting a securities fraud cause of action may not simply claim as damages the full market value loss during the given period, but rather is required to prove that the damages sought were actually caused by the alleged fraud, rather than other market factors." *Id*. at 269-270. The court noted further difficulties "given the tumultuous market conditions that were prevailing during the" credit crisis. *Id*. at 270.

Here, plaintiffs fought for a return of the full $337 million of losses, but other factors such as the impact of the financial crisis in general on these assets and Citigroup's financial support of the fund may well have had a substantial downward impact on provable damages. As to the latter, Citigroup provided substantial financial support for the fund in 2008, which allowed the fund to reduce leverage and unwind assets at a more measured pace, and it is unclear how these efforts at mitigation would reduce the best possible recovery. For example, defendants made a cash payment to the CSO Fund of $159 million in early 2008, and that amount or some portion thereof might diminish plaintiffs' damages.

Plaintiffs therefore submit that the ProSieben loss described in the Motion for Preliminary Approval is the more verifiable measure of the best possible recovery. The ProSieben loss booked by the fund at the end of 2007 was $62.4 million, of which $39.2 was borne by class members. On this measure, the class is recovering 35% of damages, which is at the very highest end of the range of reasonableness, given the risk factors addressed in earlier briefing. *See, e.g., In re: Bear Stearns*, 909 F. Supp. 2d at 269 (finding 11% to be in the range of reasonableness); *In re: Hi-Crush Partners*, 2014 WL 7323417 at *10 (evaluating settlement under eighth *Grinnell* factor and calling a 36% recovery "a fine result"); *Grinnell*, 495 F.2d at 455 n.2 ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *see also* Memorandum of Law in Support of Motion for Final Approval dated Nov. 4, 2015 at 11-13 (discussing risk factors) [ECF No. 151].

**III.    Update on Expenses**

    A.    <u>Confirmation of Aggregate Expenses</u>

Plaintiffs request reimbursement of litigation expenses. *See* Motion for Final Approval dated November 4, 2015 [ECF No. 150]; *see also* Memorandum of Law in Support of Award of

6

Attorneys Fees and Reimbursement of Litigation Expenses dated November 4, 2015 [ECF No. 152] (setting forth detail). Plaintiffs request $181,741.34, reflecting the amounts below in Attachment B. This amount is $1,214.66 less than the $182,956.00 originally requested in the Motion for Final Approval. The reduction is comprised of two amounts. First, as the Court noted during the fairness hearing, there was a difference of $295.41 between the amount of expenses requested and the amount of expenses represented in plaintiffs' exhibits which set forth the categories of expenses. At the hearing, plaintiffs' counsel represented that they would recheck the expense amounts. Having performed a recheck of the expense amounts it appears that the difference of $295.41 was due to a math error when compiling the aggregate number in the motion from the numbers in the accompanying declarations. We also detected another error relating to a deposition transcript cost. As a result of this error plaintiffs are reducing the request for reimbursement related to the deposition of former CAI employee Jolie Eisner by $919.25. *See* Attachment C, below; Straite Decl. ¶ 20.

      B.      Detail Related to Plaintiffs' Experts

Plaintiffs request reimbursement of expenses associated with four experts: Christopher Miller at Investment Quotient Ltd. in the United Kingdom (hedge fund expert); Gallant Maxwell Ltd. in the United Kingdom (UK solicitors); Prof. Roy Simon at Hofstra University School of Law (ethics expert) and Gary Trugman (damages expert). Accompanying this brief are supplemental declarations of Edward Glenn, Jr. and David Straite setting forth information related to "the services of each expert" consistent with *In re: AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462 (S.D.N.Y. 2004). The supplemental declarations also "annex any agreements with the expert and any billing statements rendered by the expert." *Id.* at 469.

C. Detail Related to Transcripts

Plaintiffs request reimbursement of expenses for deposition and other transcripts totaling $39,989.53. This amount is a subset of the full expense amount noted above. The itemized detail is summarized in Attachment C, and further detail is provided in the expense reports provided to the Court *in camera* on December 16, 2015 in advance of the fairness hearing.

IV. Update on Class Notice Through Citigroup-Affiliated Nominees

Additional information requested by the Court at the fairness hearing related to class notice outside of the United States via nominee banks is being gathered with the assistance of defendant Citigroup, and will be provided to the Court on or before January 15, 2016 pursuant to the Order of Dec. 22, 2015 [ECF No. 161].

Dated: December 23, 2015
New York, NY

| ZAMANSKY LLC | KAPLAN FOX & KILSHEIMER LLP |
|---|---|
| */s/ Jacob Zamansky* | */s/ David Straite* |
| Jacob H. Zamansky | Frederic S. Fox |
| Edward H. Glenn, Jr. | David A. Straite |
| 50 Broadway, 32nd Floor | 850 Third Avenue |
| New York, NY 10004 | New York, NY 10022 |
| Tel. (212) 742-1414 | Tel. (212) 687-1980 |
| Fax (212) 742-1177 | Fax (212) 687-7714 |

*Counsel for Plaintiffs and Class Counsel*

ATTACHMENT A

DETAIL RELATED TO FULL OR PARTIAL REDEMPTIONS

| Investor[2] | Date of Redemption Request | Amount Redeemed (US$) | Full or Partial Redemption? |
|---|---|---:|---:|
| A | Jun. 20, 2007 | 3,793,000 | Full |
| B | Aug. 9, 2007 | 12,844,000 | Partial |
| C | Aug. 13, 2007 | 5,933,000 | Partial |
| D | Sept. 20, 2007 | 527,882 | Full |
| E | Sept. 20, 2007 | 488,983 | Full |
| F[3] | Sept. 27, 2007 | 4,000,000 | Partial |
| G[4] | Sept. 28, 2007 | 349,162 | Full |
| H | Oct. 25, 2007 | 3,148,073 | Full |

---

[2]  Names of investors (other than nominees) are designated "Confidential" by defendants pursuant to the Stipulation and Order for the Production and Exchange of Confidential Information dated April 21, 2014 [ECF No. 94].  Plaintiffs can provide the names *in camera* or under seal with permission from defendants or upon Court order.

[3] Investor "F" is Citibank Securities (Japan) Ltd. ("Citibank Securities Japan"), an affiliate of defendant Citigroup, Inc. acting as nominee for an Asian pension fund.  The retail securities businesses of Citibank Securities Japan were consolidated with those of Nikko Cordial Securities Inc. in 2008.  Both entities were indirectly 100% owned by Citigroup, Inc. at the time of the consolidation.

[4]  Investor "G" is Cititrust (Bahamas) Ltd., an affiliate of defendant Citigroup, Inc. acting as nominee for a beneficial owner.  The identity of the beneficial owner is not known to the parties.

ATTACHMENT B

EXPENSE SUMMARIES

**Kaplan, Fox & Kilsheimer LLP**[5]

| Expense Category | Amount Paid (US$) |
|---|---:|
| Travel | 699.87 |
| Computerized Legal Research | 16,671.88 |
| Printing/Copying | 2,861.04 |
| Postage/Deliveries | 1,700.71 |
| Transcripts (court and deposition) | 39,989.53 |
| UK Deposition Fee | 556.90 |
| Process Services (US and UK) | 2,278.69 |
| Expert: Investment Quotient (UK) | 75,393.74 |
| Teleconference | 529.38 |
| Court Fees (UK) | 169.19 |
| Meeting Costs | 1,994.84 |
| Total: | $142,845.77 |

**Zamansky LLC**[6]

| Expense Category | Amount Paid (US$) |
|---|---:|
| Postage/Messengers/Air Express | 541.74 |
| Expert: Gallant Maxwell Ltd. (advance) | 10,000.00 |
| Expert: Trugman Valuation | 18,713.41 |
| Expert: Prof. Roy Simon | 665.00 |
| Online Research | 2,803.34 |
| Photocopies | 1,749.08 |
| Travel | 3,562.42 |
| Meeting Costs | 505.58 |
| Court Filing Fee | 350.00 |
| Total: | $38,895.57 |

**Total Unreimbursed Expenses: $181,741.34**

---

[5] Includes $3,410.28 of expenses incurred by Stewarts Law US LLP prior to May 31, 2013, and $358.33 incurred by Straite PLLC between June 1, 2013 and July 28, 2013.  Mr. Straite joined Kaplan Fox on July 29, 2013.

[6] Includes $1,555.18 of expenses incurred by additional counsel Law Office of Christopher Gray.

10

ATTACHMENT C

EXPENSE DETAIL FOR TRANSCRIPTS

**DEPOSITION TRANSCRIPTS**

| Date | Deponent | Noticed by | Text (US$) | Video (US$) | Amount paid (US$) |
|---|---|---|---:|---:|---:|
| 10/1/2014 | Ramesh Parameswar | Plaintiffs | 2,195.55 | 945.00 | 3,140.55 |
| 10/3/2014 | David Beach | Defendants | 3,943.45 | 751.24 | 4,694.69 |
| 10/30/2014 | Christopher Kelly | Defendants | 3,186.65 | 751.24 | 3,937.89 |
| 11/4/2014 | Christopher M. D'Orsi | Defendants | 3,466.25 | 647.81 | 4,114.06 |
| 11/13/2014 | Gary R. Trugman | Defendants | 2,567.90 | 440.95 | 3,008.85 |
| 11/17/2014 | Christopher D. Miller | Defendants | 4,237.25 | 647.81 | 4,885.06 |
| 1/22/2015 | Paul Gompers | Plaintiffs | 3,944.90 | 1,378.05 | 5,322.95 |
| 4/13/2015 | Jolie Eisner | Plaintiffs | 1,426.80 | 865.00 | 2,291.80 |
| 4/21/2015 | Jonathan L. Dorfman | Plaintiffs | 3,588.70 | 860.00 | 4,448.70 |
| 4/29/2015 | James O'Brien | Plaintiffs | 795.05 | 675.00 | 1,470.05 |
| | | | | **Subtotal of Deposition Transcripts:** | **37,314.60** |

**OTHER TRANSCRIPTS**

| Date | Description | Amount paid (US$) |
|---|---|---:|
| 4/30/2014 | Status Conference Hearing Transcript | 129.69 |
| 12/18/2014 | Status Conference Hearing Transcript | 142.29 |
| 3/26/2015 | Transcription of audio files produced by defendants | 2,402.95 |
| | **Subtotal of Other Transcripts:** | **2,674.93** |

**Total Amount Paid for Transcripts:  $39,989.53**

11